UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. BLUNT,

      Plaintiff,      Case No. 1:13-cv-1048

v.                Honorable Paul L. Maloney

IONIA CORRECTIONAL FACILITY et al.,

      Defendants.
_____/

**OPINION**

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and state law. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act (PLRA), PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed. Plaintiff's federal claims will be dismissed for failure to state a claim. Plaintiff's independent state law claims will be dismissed without prejudice.

**Discussion**

I. <u>Factual allegations</u>

Plaintiff James A. Blunt is incarcerated by the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF). Defendants are current and former employees of ICF: Erica Huss, Deputy of the Housing Units; (unknown) Turner, Housing Unit Supervisor for unit 4; (unknown) Buchin, Housing Unit Supervisor for unit 3; former Grievance Coordinator (unknown) Breedlove; and Sergeant (unknown) Greenfield.[1]

In his amended complaint, Plaintiff alleges that on July 29, 2013, while he was confined in administrative segregation, he informed Defendant Huss and his unit supervisor, Robert J. Ault, that he feared that he would be assaulted if he was returned to the general population. However, the following day, Plaintiff was released to the general population in housing unit 3. Plaintiff asserts that gang members in the administrative segregation unit adjacent to unit 3 "sent" an "order" to assault him "on sight."[2] (Am. Compl., docket #7, Page ID#32.) Plaintiff allegedly heard the voices of gang members asking "what cell did the new guy go to[?]" (*Id.*)

Shortly after arrival in unit 3, Plaintiff gave a prisoner kite to Officer Ross, requesting to be placed in protective custody. When she returned to Plaintiff's cell on her next round, Ross told Plaintiff that Defendants Buchin and Greenfield were reviewing his kite. Buchin visited Plaintiff's cell later that day. He stated that he received Plaintiff's kite, but that he needed "names,

---

[1] In his original complaint, Plaintiff also named ICF and an unknown supervisor of housing unit 3 as defendants. They are not named as defendants in the amended complaint; thus, they have been dismissed from the action.

[2] In a grievance attached to one of Plaintiff's filings, he asserts that "there's a hit out on me ordered since [2010] because it was exposed that I blew the whistle on a Nurse Walker and Inmate Thomas at AMF." (Supplement to Compl., 9/11/13 MDOC Prisoner Grievance, docket #3-1, Page ID#14.)

numbers and locks." (*Id.*) He told Plaintiff, "I don't play that easy to lock up for protection stuff in my unit." (*Id.*) However, Plaintiff did not know who was going to attack him.

The next day, July 31, 2013, Plaintiff was "technically knocked out" by another prisoner. (*Id.*) Greenfield subsequently prepared a "notice of intent for protection form" and Defendant Turner interviewed Plaintiff regarding the notice of intent. During the interview, Turner allegedly told Plaintiff to "minimize the staff c[o]rruption aspect of [Plaintiff's] complaint,"[3] because Plaintiff "could get a lot of people fired[.]" (*Id.*) Plaintiff was then placed in protective custody pending an investigation. An officer who is not a defendant in this action, Resident Unit Manager (RUM) Gilkie, reviewed the notice of intent and authorized Plaintiff's release back to the general population, without affording Plaintiff a hearing. Apparently, the prisoner who assaulted Plaintiff was discharged from his sentence, though Plaintiff believes that his assailant was paid to commit the assault by other gang members who are still in prison. (*See* docket #3-1, Page ID#14.) Plaintiff refused to leave protective custody, so he was charged and convicted of a misconduct for refusing to obey an order. As punishment, he was placed in administrative segregation. At a security classification review hearing with Defendant Huss, Plaintiff again asked not to be returned to the general population; however, Huss stated that Plaintiff would return after his misconduct sanction was complete.

Plaintiff "attempted" to write prisoner grievances about the foregoing conduct by Defendants, and about Defendant Breedlove's alleged "interference with the exhaustion of

---

[3]Though it is not clear from Plaintiff's allegations, it appears that Turner was referring to an anticipated civil rights complaint.

[Plaintiff's] Administrative Remedies," but his grievances "mysteriously disappeared." (Am. Compl., docket #7, Page ID#32.)[4]

After filing the instant action, Plaintiff was returned to the general prison population. Within a day of his return, gang members allegedly "started plotting on [Plaintiff]." (*Id.*) Thereafter, he was placed tn protective custody and he is now housed at level V security.

Plaintiff claims that Defendants were negligent in performing their duties by failing to protect him. He asserts that their actions violated state law, the PLRA, and his right to avoid cruel and unusual punishment under the Eighth Amendment. As relief, Plaintiff seeks damages and an order requiring the MDOC to transfer him to a protective custody unit.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

---

[4]According to supplemental exhibits to the complaint, Breedlove returned one of Plaintiff's grievances because Plaintiff "need[ed] to resolve [his] issue with the staff member involved prior to filing [his] grievance." (Breedlove Mem., docket #3-1, Page ID#13.)

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Eighth Amendment**

Plaintiff claims that Defendants ignored his need for protection, failed to protect him from an assault by another inmate, and denied his requests for protective custody. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability . . . ." *Farmer*, 511 U.S. at 834. In order to establish liability under the

Eighth Amendment, two requirements must be met. First, the deprivation alleged must be "objectively, sufficiently serious." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). An inmate must establish that the defendant disregarded "a substantial risk of serious harm." *Id.* at 828. Second, the prison official must have a "'sufficiently culpable state of mind,'" which is "'deliberate indifference' to inmate health or safety." *Id.* at 834 (quoting *Wilson*, 501 U.S. at 297). To be liable for deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In addition, the official must have "disregard[ed] [the] risk by failing to take *reasonable* measures to abate it." *Id.* at 829, 847 (emphasis added). Thus, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 830.

Before he was released from administrative segregation in July 2013, Plaintiff allegedly told Defendant Huss and another officer that he feared for his safety; however, Plaintiff alleges no facts that would have justified his fear at that time. His subjective apprehension of an attack is not, by itself, sufficient to establish that he was subject to an objectively serious risk of harm, let alone show that Huss was aware of, and deliberately disregarded, facts pointing to such a risk.

After he was released from administrative segregation, and the day before he was assaulted, Plaintiff asked to be placed in protective custody, ostensibly because he believed that gang members were planning to assault him. His request was reviewed by Defendants Buchin and Greenfield and then denied by Defendant Buchin. Here again, Plaintiff's claim is deficient because he alleges no specific facts which would have allowed a prison official to draw the inference that

Plaintiff was at substantial risk of being harmed. Plaintiff states that he believed someone had ordered gang members to assault him, but he alleges no facts to support this belief, other than that he heard voices of other inmates asking, "what cell did the new guy go to?" (Am. Compl., docket #7, Page ID#32.) Indeed, Buchin expressly denied Plaintiff's request for protection because Plaintiff could not provide specific information, like "names, numbers and locks."

In *Gant v. Campbell*, 4 F. App'x 254 (6th Cir. 2001), the Sixth Circuit affirmed the dismissal of a prisoner's claim where he "expressed a general concern" for his safety, but "he had not received any threats" and he did not "identify any particular gang members whom he feared." *Id.* at 256. Similarly, although Plaintiff clearly expressed a concern for his safety by requesting protective custody, his allegations do not include particular details that would have justified such a concern. Even if Plaintiff could not identify a specific inmate who might assault him, he could have explained why he believed that there was an "order" from gang members to assault him, or he might have identified the group of prisoners whom he believed to be instigating the order. In short, Plaintiff's allegations are wholly inadequate to "permit the court to infer more than the mere possibility of misconduct" by Defendants Buchin and Greenfield. *See Iqbal*, 556 U.S. at 679.

Moreover, while Plaintiff claims that Defendants were negligent in following proper procedure in response to his request for protective custody, negligence alone cannot support an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (noting that "deliberate indifference entails something more than mere negligence"); *Gibson v. Foltz*, 963 F.2d 851 (6th Cir. 1992) ("Lack of due care for a prisoner's safety . . . is insufficient to support a claim of an Eighth Amendment violation."). Furthermore, Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577,

581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Plaintiff also contends that Defendant Huss refused a request for placement in protective custody after RUM Gilkie considered the issue and authorized Plaintiff's return to the general prison population. Again, Plaintiff fails to allege facts sufficient to establish, for purposes of stating a claim, that Huss was aware of and disregarded a substantial risk of harm. The fact that Plaintiff was assaulted on one occasion by a prisoner who was no longer at the prison, and Plaintiff's subjective belief that unidentified gang members orchestrated the assault and planned to attack him again, are not sufficient in themselves to establish that he was at substantial risk of further harm, or that Huss was deliberately indifferent to such a risk.

Finally, the fact that Greenfield prepared a notice of intent to place Plaintiff in protective custody, and that Turner interviewed Plaintiff regarding the notice of intent (while discouraging Plaintiff from complaining about staff corruption), do not in any way suggest that these Defendants were deliberately indifferent to Plaintiff's safety. To the contrary, these actions indicate that they were taking measures to protect him.

Consequently, for the foregoing reasons, Plaintiff has not stated a plausible Eighth Amendment claim against Defendants Huss, Turner, Greenfield, or Buchin.

## B. Grievances

Plaintiff also claims that former Grievance Coordinator Breedlove lost or did not process his grievances, and thereby interfered with his attempt to exhaust his administrative remedies, in violation of the "PLRA" (citing 18 U.S.C. § 3626) and state law (citing "MCR 148:1"). (*See* Am. Compl., docket #7-1, Page ID#34.) While the PLRA requires prisoners to exhaust "available" administrative remedies before filing suit, *see* 42 U.S.C. § 1997e(a), it does not require states or their officials to provide or adhere to a grievance procedure, nor does it provide a cause of action against them for failing to do so. *See* 42 U.S.C. § 1997e(b) ("The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title."). In addition, the federal statute cited by Plaintiff, 18 U.S.C. § 3626, merely describes the types of relief that a federal court may grant with respect to suits challenging prison conditions. It does not provide an independent basis for a cause of action to challenge the application prison grievance procedures.

Alternatively, to the extent that Plaintiff intends to assert a constitutional claim against Breedlove under § 1983, the Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*,

No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant's conduct did not deprive Plaintiff of his constitutional right to due process.

### C. Supervisory Liability

Plaintiff's complaint describes actions by individuals who are not named as defendants in this action, and he sues defendants who may have supervisory authority over those individuals. For instance, Plaintiff alleges that RUM Gilkie, who is not a defendant, reviewed a notice of intent to place Plaintiff in protective custody and determined that Plaintiff should be released into the general prison population, notwithstanding the fact that Plaintiff had been assaulted by another prisoner. After Gilkie's decision, the deputy of the housing units, Defendant Huss, told Plaintiff that he would be returned to the general prison population when he completed his misconduct sanction. To the extent that Plaintiff sues Defendant Huss, or any other defendant, solely because of their supervisory authority over another official, he cannot assert a claim under § 1983. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based

upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. For the reasons stated *supra* in Sections II.A and II.B, Plaintiff has failed to adequately allege that a Defendant engaged in any active unconstitutional conduct.

### D. State law

To the extent Plaintiff asserts that Defendants violated state laws or procedural rules, § 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Thus, Plaintiff does not state a federal claim under § 1983 solely on the basis that Defendants violated state law or procedure. Consequently, for all the foregoing reasons, Plaintiff does not state a federal claim against Defendants, under § 1983 or the PLRA.

### III. Supplemental Jurisdiction

To the extent that Plaintiff asserts any claims solely arising under state law, the Court declines to exercise supplemental jurisdiction over such claims. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v.*

*Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Thus, Plaintiff's independent state law claims, if any, will also be dismissed.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants will be dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's independent state law claims, if any, will be dismissed without prejudice because the Court declines to exercise its supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   November 25, 2013               /s/ Paul L. Maloney
                                         Paul L. Maloney
                                         Chief United States District Judge